FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2003 JUL 30 PM 1:15
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICKEY BROWN — CIVIL ACTION

versus — No. 02-1911

PARKER DRILLING OFFSHORE CORPORATION — SECTION: I/3

**ORDER AND REASONS**

Pending before the Court is the motion of defendant, Parker Drilling Offshore Corporation ("Parker"), for judgment as a matter of law and, alternatively, for a new trial, for remittitur and to alter or amend judgment.[1] The plaintiff, Rickey Brown ("Brown"), opposes the motion.

*Facts*

The plaintiff sued his former employer seeking damages for injuries he alleged were sustained on April 20, 2001, while working aboard Parker's jack-up vessel.[2] A jury trial was held on May 19, 20, and 21, 2003, with respect to plaintiff's claims of negligence under the Jones Act, unseaworthiness under the general maritime law, retaliatory discharge, maintenance and cure, and an unreasonable

[1] Rec. Doc. No. 70.

[2] Rec. Doc. No. 1.

Fee
Process
X Dktd
CtRmDep
Doc. No. 84

DATE OF ENTRY
JUL 30 2003

failure to pay maintenance and cure.[3] The jury returned a verdict in favor of the plaintiff, finding the defendant negligent under the Jones Act.[4] The jury apportioned fault between the plaintiff and the defendant, finding the defendant to be 75% at fault and the plaintiff to be 25% at fault.[5] The jury also found that the plaintiff was entitled to maintenance and cure benefits, that the defendant was unreasonable in its failure to provide those benefits to the plaintiff, and that the defendant's failure to provide maintenance and cure benefits to the plaintiff caused him injury.[6]

When the jury first returned its verdict, it failed to award the plaintiff general damages on his Jones Act claim, i.e., "pain and suffering, including physical pain and suffering, mental anguish and anxiety, and loss of life's pleasures, past and future."[7] The

---

[3]Rec. Doc. Nos. 62-64.

[4]Jury verdict form, attached to Rec. Doc. No. 64.

[5]Jury verdict form, attached to Rec. Doc. No. 64.

[6]Jury verdict form, attached to Rec. Doc. No. 64. The jury also found that the vessel was not unseaworthy and that the plaintiff was not discharged in retaliation for having exercised his right to file a personal injury action against the defendant. In connection with the plaintiff's maintenance and cure claim, the jury found that during his pre-employment medical examination process, the plaintiff did not intentionally misrepresent or conceal material medical facts which were causally linked to the injuries he suffered while in the service of the vessel.

[7]Jury verdict form, attached to Rec. Doc. No. 64.

jury awarded the plaintiff $ 50,000 for past loss of income, $ 150,000 for future loss of income, and $ 150,000 for future medical expenses. The jury also awarded the plaintiff future cure, but noted on the verdict form that the amount was included in the future medical expense award.[8] Finally, the jury awarded $ 75,000 to the plaintiff for the injuries he suffered as a result of the defendant's failure to provide maintenance and cure benefits.[9]

Before the jury was discharged, plaintiff moved for an instruction to the jury that its verdict was inconsistent because it awarded plaintiff $ 150,000 in future medical expenses, but it awarded nothing for physical and mental pain and suffering, past and future. The Court instructed the jury to resume deliberations, noting that its Jones Act damage award was inconsistent. The Court returned the verdict form to the jury, advising the jury that they were to reconcile their award for past and future pain and suffering with their award for future medical expenses. After further deliberations, the jury returned its verdict, awarding plaintiff $ 100,000 for past and future pain and suffering with no other

[8]Jury verdict form, attached to Rec. Doc. No. 64.

[9]Jury verdict form, attached to Rec. Doc. No. 64.

changes indicated on the jury interrogatory form.[10]

Based upon the jury verdict, judgment was entered on May 27, 2003,[11] and an amended judgment, correcting an error in calculation, was entered on May 28, 2003.[12] Twenty-five percent was deducted from the amounts awarded to plaintiff for pain and suffering, past loss of wages, and future loss of wages, but no deductions were taken from future cure, maintenance, and the $ 75,000 award for injuries which plaintiff incurred as a result of the defendant's failure to provide maintenance and cure benefits. From this judgment, defendant has filed the instant motion.

*Discussion*

The court in Laxton v. Gap, Inc., _____ F.3d _____, 2003 WL 21309679 (5th Cir. 2003), recently reiterated the standard to apply when considering a motion for judgment as a matter of law:

> Judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). This occurs when the " 'facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.' "

[10] Jury verdict form, attached to Rec. Doc. No. 64.

[11] Rec. Doc. No. 66.

[12] Rec. Doc. No. 68.

> *Wallace [v. Methodist Hospital System]*, 271 F.3d [212], 219 [(5th Cir. 2001)] (*quoting Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000)); *see also Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969). As we review the record, we "'must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence.'" *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000)). We must disregard evidence favorable to the moving party that the jury is not required to believe. *See id.* The court gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses. *See Wallace*, 271 F.3d at 219. Finally, more than a mere scintilla of evidence is required to render the grant of a judgment as a matter of law inappropriate. *See id.*

2003 WL 21309679 at *4. Stated another way, "'[I]f there is substantial evidence . . . of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion [for judgment as a matter of law] should be denied.'" Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2003)(*quoting* Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1979)(en banc), *overruled in part on other grounds*, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997)(en banc)).

In Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946), the Supreme Court provided guidelines to use when deciding whether there is sufficient evidence to hold an employer liable under the Federal Employer's Liability Act.[13]

> [W]here, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.

327 U.S. at 653, 66 S.Ct. at 740. Relying on this standard in a Jones Act case, the Fifth Circuit stated that, "[u]nder *Lavender*, judgment as a matter of law on a Jones Act count is appropriate only when there is a complete absence of probative facts supporting the nonmovant's position." Hughes v. International Diving and Consulting Services, Inc., 68 F.3d 90, 93 (5th Cir. 1995)(other citations omitted). "This standard is highly favorable to the plaintiff and requires that we validate the jury verdict if at all possible." Id. "We also recognize that ambiguities or doubts in the application of the law of maintenance and cure are resolved in favor of the seaman." Gaspard v. Taylor Diving & Salvage Co., Inc.,

[13] 45 U.S.C. § 51.

649 F.2d 372, 374, n. 2 (1981); *see also* Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 94 (5th Cir. 1985).

The defendant contends that no reasonable and fair-minded jury could have concluded that its negligence was a cause of injury to the plaintiff because, to so find, the jury would have had to find the plaintiff credible. The defendant characterizes the plaintiff as an "admitted perjurer."[14] Parker insists that the evidence supports its defense that the accident did not occur at all or that it did not occur in the manner attested to by the plaintiff.

In addition to its motion relative to the jury's finding on Jones Act liability, the defendant moves for judgment as a matter of law on its McCorpen defense to the plaintiff's claim for maintenance and cure benefits. In McCorpen v. Central Gulf Steamship Corp., 396 F.2d 547, 549 (5th Cir. 1968), the court held that "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman **intentionally misrepresents or conceals** material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure. . . . Of course, the defense that a seaman knowingly concealed material medical information will not prevail unless there

---

[14]The plaintiff never "admitted" at trial to being a "perjurer", providing explanations for any perceived inconsistencies in his testimony.

is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." (all citations omitted and emphasis added).

Defendant argues that the plaintiff "admitted on the stand that he misrepresented his medical conditions on the Parker application."[15] Contrary to the defendant's characterization of the plaintiff's testimony, whether or not the plaintiff **intended** to misrepresent or conceal material medical facts was a hotly disputed question of fact at trial. The plaintiff stated that because of the minor nature of the muscle pulls he had experienced in the past, he did not consider any prior back strains or muscle pulls to be "back injuries" when confronted with the question on the Parker employment application. He denied "intentionally concealing" any material medical information. It is apparent that the jury gave credence to his explanation and it rejected Parker's McCorpen defense.

Viewing the evidence in the light most favorable to the non-moving party, the Court also finds that the plaintiff did offer substantial evidence supporting his Jones Act and maintenance and cure claims. Brown was, in fact, employed as a Jones Act seaman on the day of the accident on Parker's drilling vessel. Plaintiff

[15] Rec. Doc. No. 70, memorandum in support, p. 14.

testified that he was engaged in pulling slips on the rig floor when the slips stuck in the master bushing, causing them to rise from the drill floor and then suddenly drop, abruptly jerking the plaintiff and causing injury to his back. He reported the accident in a timely manner and he was placed on light duty.

Other evidence was presented which corroborates plaintiff's claim. There was testimony that the master bushing should have been greased to prevent it from sticking, that plaintiff had never actually been instructed to grease the master bushing, that under normal circumstances the master bushing should not rise from the drill floor, that Brown was an excellent employee during the six months prior to the accident that he worked for Parker, and that Brown had never exhibited back pain or a back injury prior to the accident. Plaintiff's drilling procedures expert, Mr. Kubelka, testified that the plaintiff was not properly trained and that the equipment in use on the Parker rig was not functioning properly. In addition, there was uncontradicted medical evidence that plaintiff does have a herniated disc in his lumbar region.

Parker's entire argument in favor of its motion for judgment as a matter of law is based upon its interpretation of the evidence in the light most favorable to its case, relying almost exclusively

on its own credibility determinations. As noted above, however, in deciding a motion for judgment as a matter of law, the district court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Laxton, 2003 WL 21309679 at *4. "[I]t is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Delano-Pyle v. Victoria County, Texas, 302 F.3d 567, 572 (5th Cir. 2002), *quoting* McArthur v. Univ. of Tex. Health Ctr. at Tyler, 45 F.3d 890, 896 (5th Cir. 1995)(citation omitted). As noted, the district court's task is to determine if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict, disregarding evidence favorable to the moving party that the jury is not required to believe. Id. Applying this stringent standard, the Court finds that the defendant's motion for judgment as a matter of law is without merit.

The defendant next argues that it is entitled to a new trial or, alternatively, that it is entitled to remittitur. In Laxton, the Fifth Circuit explained the standard for granting a new trial and for ordering remittitur:

> This court has held that when a jury verdict results from passion or prejudice, a new trial is the proper remedy. *Brunnemann v. Terra Int'l., Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). When a damage award is merely excessive or so large as to appear contrary to right reason, remittitur is the appropriate remedy. *See id.* . . . .
>
> The grant of a new trial is reviewed for abuse of discretion. *See Thomas v. Texas Dep't of Criminal Justice*, 297 F.3d 361, 368 (5th Cir. 2002). A decision to grant a new trial is, however, accorded less deference than a decision denying the grant of a new trial. *See Brady v. Fort Bend Cty.*, 145 F.3d 691, 713 (5th Cir. 1998). Courts grant a new trial when "'it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.'" *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999)(quoting *Del Rio Distributing, Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n. 3 (5th Cir. 1979). In granting a new trial, the district court weighs all the evidence, and it need not view it in the light most favorable to the nonmoving party. *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). A new trial is warranted if the [verdict] is against the great, and not merely the greater, weight of the evidence. *See Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982).

2003 WL 21309679 at *12.

With respect to the defendant's motion for a new trial on the Jones Act negligence and entitlement to maintenance and cure claims, for reasons previously stated, the motion is without merit. The

Court finds that the verdict is not against the great weight of the evidence, there was no prejudicial error, and a review of the record does not demonstrate that substantial justice was not done.

The defendant also seeks a new trial on damages, arguing that the damage award does not adequately reflect the jury's intent or, alternatively, the verdict was compromised. At some point during jury deliberations, apparently after the Court instructed the jury to resume deliberations in order to reconcile an inconsistent verdict, the jury sent a note to the Court,[16] signed by the foreperson, which stated that:

> This is what we wanted to award. We are not sure if we put in the correct places on the forms.

| | |
|---|---|
| Surgery | 100,000 |
| Other Medical | 50,000 |
| Loss[sic] Wages | 50,000 |
| Spinal Damage due to MRI delay | 75,000 |
| <u>Future Wages</u> | <u>100,000</u> |
| | 425,000 |

The jury was asked to resume deliberations to reconcile their damage award verdict. The defendant argues that because, when asked to resume deliberations, the jury was not specifically instructed that it could change any aspect of the verdict, the jury's intent was

[16] Rec. Doc. No. 64, attachment, jury question no. 4.

abrogated and it has been prejudiced.

When the jury was instructed to resume deliberations, the Court advised that the verdict with respect to question numbers 7(a), the amount awarded for past and future pain and suffering, and 7(d), the amount awarded for future medical expenses, were inconsistent. The Court advised the jury that it needed to reconcile the answers to question numbers 7(a) and 7(d), and that the foreperson should initial any change in the verdict form. The jury was not instructed that it could only change the answer to 7(a) and it was not instructed that it could not change any other answer. The jury was simply instructed that the verdict with respect to damages was inconsistent and that the answers to question 7(a) and 7(d) should be reconciled. After the jury returned its verdict, the Court read the verdict and polled each juror, asking if the verdict was his or her verdict. All jurors responded in the affirmative.

In Yarbrough v. Sturm, Ruger & Co., 964 F.2d 376, 379 (5th Cir. 1992), the court observed that, "[i]t is inconceivable that the jury could find liability and then award damages for past but not future disfigurement, for past and future medical expenses but not for past and future pain and suffering. . . ." Courts have routinely held that in circumstances when a jury finds liability and awards special

damages, a jury's failure to also award any sums for past and future pain and suffering is inconsistent.[17]

"When a special verdict form is used and the jury's findings apparently conflict, the court has a duty to harmonize the answers, if it is possible to do so under a fair reading of them." Ladnier v. Murray, 769 F.2d 195, 198 (4th Cir. 1985), *citing* Atlantic & Gulf Stevedores, Inc. v. Ellerman Liners, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). "If, however, 'viewed in the most generous way, the answers are inconsistent with each other, a new trial is ordinarily required'." Ladnier, 769 F.2d at 195, *quoting* 9 C. Wright and A. Miller, Federal Practice and Procedure

---

[17] *See, e.g.,* Davis v. Becker & Associates, Inc., 608 F.2d 621, 623 (5th Cir. 1979)("Thus the interrogatory awarding "0" damages for pain and suffering cannot be reconciled with Interrogatory No. 1, finding that defendant negligently caused injury to plaintiff, and 5(a), (b) and (c), awarding 100% of lost earnings . . . ."); Lucas v. American Manufacturing Co., 630 F.2d 291, 293 (5th Cir. 1980)("Once the jury found the defendant liable for plaintiff's injuries, plaintiff was entitled to compensation. The defendant stipulated before trial that the plaintiff had incurred $ 8,503 in expenses as a result of his injuries; the verdict, however, was less than half of Lucas' stipulated out-of-pocket losses and reflected no award for pain and suffering. We find no evidentiary basis for the jury's award of only $ 3,500."); Brunet v. Clear Keys Towing, Inc., 1997 WL 240750 at *2 (E.D. La. 1997)("The jury's determination that plaintiff sustained a back injury which legitimately debilitated him from working for a significant period of time and which took a full year to recover cannot logically be reconciled with the jury's determination that he sustained not a single dollar's worth of physical pain, suffering, mental anguish, or anxiety. (Citations omitted). Surely, a back injury of this severity is associated with some degree of pain and anxiety."); Denoux v. Dann Marine Towing, L.C., 1998 WL 426218 at * 1 (E.D. La. 1998)("The jury's verdict in this case is inconsistent. The jury's verdict finding that the defendant was negligent, that such negligence caused the plaintiff's injuries, and that the defendant was liable for payment of additional maintenance and cure benefits cannot be reconciled with the finding that the plaintiff sustained no pain and suffering.").

§ 2510, p. 517 (1971)(other citations omitted).

While a new trial may be granted to remedy an irreconcilable jury verdict, "the better practice is to object when the jury returns its verdict so that the trial judge can evaluate whether to send the case back to the jury at that point for reconsideration." Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 781 n. 9 (5th Cir. 1986).[18] The Federal Rules of Civil Procedure unambiguously allow the district court to return the jury to deliberation in light of inconsistent answers to written interrogatories. Federal Rule of Civil Procedure 49(b) provides that:

> The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. . . . When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, **or the court may return the jury for further consideration of its answers and verdict** or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent

---

[18] *See also*, Larson v. Neimi, 9 F.3d 1397, 1402 (9th Cir. 1993)("Of course, it makes a good deal of sense to require trial and appellate courts to do all they can to reconcile special verdict answers when the only alternative is ordering a new trial. **However, when the very body that issued the ambiguous or inconsistent verdict is still available to clarify its meaning, a request that it do so comports with common sense as well as efficiency and fairness."** (Emphasis added)).

> with the general verdict, judgment shall not be entered, **but the court shall return the jury for further consideration of its answers and verdict** or shall order a new trial.

(Emphasis added).

Citing F.R.Civ.P. 49(b) as authority, the Fifth Circuit has held that the district court has wide discretion to determine whether the jury's answers on the special interrogatory form are clear and whether, in light of an inconsistency, it should resubmit the issue to the jury for further consideration. Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258, 1260 (5th Cir. 1988). As the court observed in Richard, "[t]he district judge, who has observed the jury during the trial, prepared the questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncertainty. The judge also is in an excellent position to evaluate whether the jury will likely be able to resolve this uncertainty with proper guidance." Id., *citing* Geosearch, Inc. v. Howell Petroleum Corp., 819 F.2d 521, 527 (5th Cir. 1987); McVey v. Phillips Petroleum Corp., 288 F.2d 53, 59 (5th Cir. 1961).[19]

---

[19] *See also*, Duk v. MGM Grand Hotel, Inc., 320 F.3d 1052, 1057 (9th Cir. 2003)("We now hold that where the jury is still available, a district court's decision to resubmit an inconsistent verdict for clarification is within its discretion.").

In light of the above, the resubmission of the inconsistent damage verdict to the jury and the Court's related instructions to the jury did not prejudice the defendant. "[M]ere resubmission does not necessarily coerce a verdict." Richard, 853 F.2d at 1260, *quoting* Nance v. Gulf Oil Corp., 817 F.2d 1176, 1178 (5th Cir. 1987)(other citations omitted). The defendant is not entitled to a new trial on this basis.[20]

Defendant also argues that a new trial should be granted because the jury returned a compromise verdict. "If the verdict on liability were to show evidence of influence by passion, prejudice, compromise, prejudicial error, or misconduct, then a complete new trial would be necessary." Westbrook v. General Tire and Rubber

---

[20] In support of its motion for a new trial, defendant represents to the Court that a person who identified himself as a juror in the case telephoned defense counsel's office and he discussed some concerns regarding the final amount awarded to the plaintiff with defense counsel's executive assistant. Rec. Doc. No. 70, p. 19, Exh. I.

This interview with a juror was in violation of Local Rule 47.5E of the Uniform Local Rules for the Eastern, Middle, and Western Districts of Louisiana. which prohibits communications with jurors by any attorney, party to an action, or anyone acting on their behalf, **"except by leave of court granted upon good cause shown."** (Emphasis added). While this violation of LR 47.5E by a member of defense counsel's staff may well have been inadvertent, it was not reported to the Court when it occurred, but defense counsel instead utilized it as an argument in support of a new trial.

This juror's alleged comments, if reported accurately, would not support the granting of a new trial. After the jury interrogatory form was read, all jurors, including the one who allegedly attempted to contact defense counsel, reported in the affirmative when asked if it was their verdict. Nothing in the reported communication with the juror indicates that the jury's verdict was not unanimous or that the answers on the interrogatory form were not the unanimous answers of the jury.

Co., 754 F.2d 1233, 1242 (5th Cir. 1985)(citations omitted). "A compromise verdict occurs when a jury which is unable to agree on liability compromises on that disagreement and awards inadequate damages." Brunet, 1997 WL 240750 at *1, *citing* Pagan, 931 F.2d at 339. "In determining whether a jury reached a compromise verdict, the court examines the 'totality of the circumstances' and considers any indicia of compromise apparent from the record as well as other factors that may have caused the jury to reach an verdict for inadequate damages if the jury actually found liability." Brunet, 1997 WL at *1, *citing* Yarbrough, 964 F.2d at 379.[21]

While the defendant argues that the damages awarded by the defendant were scant in light of the plaintiff's request, the Court notes that after reduction for contributory negligence, the jury awarded plaintiff in excess of $ 468,000 in damages and it found the defendant liable for Jones Act negligence, past and future maintenance, future cure, and an unreasonable failure to pay maintenance and cure. The jury rejected the McCorpen defense, but it did find in favor of the defendant on the plaintiff's claim for

[21]"Factors a court may consider in determining whether a compromise verdict exists include: (1) an inadequate award of damages, (2) whether the issues of liability were strongly contested, (3) whether the jury was confused, (4) whether the parties are satisfied with the verdict, (5) how long the jury deliberated, (6) whether the jury requested additional instructions, and (7) whether the jury had attempted to qualify its award in any way." Brunet, 1997 WL at 240750 at *1, *citing* Pagan, 931 F.2d at 339.

retaliatory discharge and unseaworthiness.

The principal focus of the defendant at trial was liability. The plaintiff, a former special education student who exhibited a non-confrontational demeanor at trial, was subjected to rigorous cross-examination and he was repeatedly accused by defense counsel of lying. The jury deliberated for approximately five and one-half hours before initially returning its verdict.[22] A damage award of this magnitude suggests that the jury did not compromise its verdict, but it simply rejected the defendant's defense that the plaintiff never had an accident and that the plaintiff's testimony was simply not worthy of belief in any significant respect. The substantial amount of the award, as well as the jury's decision to find for the plaintiff on some of his claims but not others, supports a finding that the jury's verdict does not have the indicia of a compromise.[23]

The defendant next argues that the jury's award of $ 75,000 for the injury suffered by the plaintiff due to the defendant's unreasonable failure to provide maintenance and cure benefits to him

---

[22]Rec. Doc. No. 64. The Court's smooth minutes reflect that the jury retired for deliberations at 11:45 a.m. and that it initially returned its verdict for the plaintiff at 5:25 p.m.

[23]*See* Westbrook, 754 F.2d at 1242.

should be reduced by the percentage of fault attributed to plaintiff because the plaintiff's claim for unreasonable failure to pay maintenance and cure is in the nature of a "tort-like cause of action."[24] However, in describing the duty of a shipowner to provide maintenance and cure benefits, the Fifth Circuit has stated, "[t]he obligation is independent of tort law, and the shipowner's duty to pay is not affected by the injured seaman's own negligence." Boudreaux v. United States, 280 F.3d 461, 468 (5th Cir. 2002), *citing* Bertram v. Freeport McMoRan, Inc., 35 F.3d 1008, 1013 (5th Cir. 1994). "A seaman's right to maintenance and cure is implied in the employment contract between the seaman and the shipowner. It 'in no sense is predicated on the fault or negligence of the shipowner.'" Bertram, 35 F.3d at 1013, *quoting* Brister v. A.W.I., Inc., 946 F.2d 350, 360 (5th Cir. 1991)(footnote and other citations omitted). "The owner of a vessel has a duty to pay maintenance and cure which is unrelated to any duty of care under tort law." Davis v. Odeco, Inc., 18 F.3d 1237, 1246 (5th Cir. 1994), *citing* Adams v. Texaco, Inc., 640 F.2d 618, 620 (5th Cir. 1981).

In delineating the escalating scale of liability applicable to a seaman's claim against the shipowner for maintenance and cure, the

---

[24] *See* Thomas J. Schoenbaum, Admiralty and Maritime Law, § 6034 (3rd Ed. Prac. Series 2001).

court in Morales v. Garijak, Inc., 829 F.2d 1355 (5th Cir. 1987), held:

> Thus, there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay **without a reasonable defense**, he becomes liable in addition for compensatory damages.

Id. at 1358 (emphasis added). *Accord*, Galveston County Navigation District No. 1 v. Hopson Towing Company, Inc., 92 F.3d 353, 358 (5th Cir. 1996), *quoting* Morales, 829 F.2d at 1358.

When a shipowner has been "unreasonable" in failing to provide maintenance and cure benefits, it is not that the shipowner's behavior is untoward, but that the shipowner lacks "a reasonable defense." This is not equivalent to a "reasonable man" tort-like duty of care. Absent authority indicating that a seaman's award for compensatory damages for a shipowner's failure, without a reasonable defense, to provide maintenance and cure benefits should be reduced by comparative fault, the award will not be reduced.[25]

[25]Prior to submission of the case to the jury for deliberation, the defendant never requested that the jury be instructed to determine whether or not the plaintiff was contributorily negligent with respect to his claim for maintenance and cure benefits or that the jury assess to what degree any such contributory negligence caused injury, i.e., aggravated plaintiff's condition due to the failure of the defendant to provide maintenance and cure benefits. The contributory negligence determination made by the jury in the instant case concerned the degree of plaintiff's negligence which caused plaintiff's injury

Finally, the defendant seeks a remittitur of the jury's award for past lost wages and for future medical expenses/cure. The jury awarded the plaintiff $ 50,000 for past loss of income as a result of his April 20, 2001, accident. The jury awarded $ 150,000 for future medical expenses/cure. Both plaintiff and defendant agree that with respect to future medical expenses/cure, the only evidence adduced was the testimony of Dr. Bartholomew, who testified that the cost of plaintiff's surgery was $ 90,000 to $ 100,000.

"There is a strong presumption in favor of affirming a jury award of damages. The damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice." Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 183 (5th Cir. 1995)(citation omitted). In determining whether to grant a remittitur, the Fifth Circuit follows the "'maximum recovery rule' by reducing the verdict to the maximum amount the jury could properly have awarded." Id., *citing* Dixon v. International Harvester Co., 754 F.2d 573, 590 (5th Cir. 1985). The Fifth Circuit's remittitur rules provide "for remittitur if the award is excessive, and new trial on damages alone if the plaintiff

---

while he was working as a Jones Act seaman on the defendant's vessel. Using that figure to reduce plaintiff's recovery for the aggravation of his condition due to the defendant's failure to pay maintenance and cure without a reasonable defense would in any event not be appropriate.

declines the remitted award." Eiland, 58 F.3d at 183 (other citations omitted).

The defendant contends that the award for past loss of income was excessive as it was based upon the testimony of plaintiff's economist, Randy Rice, Ph.D, which the defendant contends is not supported by the evidence. Dr. Rice testified that, based upon information provided to him by plaintiff's counsel and his review of the plaintiff's Social Security earnings records, plaintiff's past loss of income to the date of the trial was $ 50,523. To arrive at that figure, Dr. Rice considered plaintiff's earnings record at Parker Drilling as well as his earnings subsequent to the accident.[26] As noted previously, the amount awarded by the jury for past loss of earnings was $ 50,000. The evidence in the record supports the amount awarded by the jury. The defendant has

---

[26]The Court reviewed the tape of Dr. Rice's trial testimony. Dr. Rice testified that while working at Parker, he assumed that the plaintiff earned $ 13.50 per hour working a 14 days on and 14 days off work schedule. He also assumed that the plaintiff was injured on April 20, 2001, and that if plaintiff had not earned any wages subsequent to that date and he paid taxes on his earnings, the amount of past lost wages from the date of the accident to the date of the trial would be $ 71,106. Dr. Rice also testified that he assumed that plaintiff worked for 32 weeks subsequent to the date of his accident at an hourly rate of $ 16 per hour for 40 hours per week, an amount which would total $ 20,663. On cross-examination, defense counsel did not provide Dr. Rice with any other figures which were arguably more accurate. In addition, the Court has reviewed defendant's exhibits 1 and 13, which are the plaintiff's Social Security, income tax, and earnings records from HMT Tank Service, Inc. A review of these records does not demonstrate that Dr. Rice's testimony relied upon faulty assumptions with no basis in evidence.

failed to show that the past loss of earnings award was clearly excessive.

Awards for special damages such as future medical expenses are subject to particular scrutiny when it appears that the award is not based on medical testimony, but mere conjecture. For example, in Simeon v. T. Smith & Son, Inc., 852 F.2d 1421, 1427 (5th Cir. 1988), the court ordered a remittitur of the $ 30,000 award for future medical expenses to $ 10,000, because the only record evidence was the testimony of the plaintiff's physician "who said there was a fifty-fifty chance that Simeon would need another operation, the total cost of which would be about $ 10,000. . . . Based on the record evidence, [$ 10,000] represents the maximum reasonable recovery for future medical expenses." Id.

Similarly, the court in Mejias-Quiros v. Maxxam Property Corp., 108 F.3d 425, 428 (1st Cir. 1997), ordered a remittitur of a $ 25,000 award for future medical expenses to $ 4,000, observing that:

> We think that the medical expense award in this case, to the extent it exceeded the $ 4,000 figure given for surgery, lacked any rational basis. There may be simple cases where, out of common experience, the jury can make such estimates, but hardly here and in so large an amount. The doctors who testified here, providing the groundwork for the handsome

> award for pain and suffering, could have been asked to quantify the future costs of medicine and office visits. Doubtless, the jury did the best it could without evidence; but the evidence should have been supplied.

Id.

While the plaintiff argues that the jury was entitled to surmise what the cost of future physical therapy, medication, or office visits might be, certainly plaintiff could have adduced such testimony from its medical expert, Dr. Bartholomew. The Court, therefore, will order a new trial on the issue of future medical expenses/future cure unless the plaintiff accepts a remittitur of that award from $ 150,000 to $ 100,000.

*Conclusion*

Considering the above and foregoing,

**IT IS ORDERED** that the motion of defendant, Parker Drilling Offshore Corporation, for judgment as a matter of law is **DENIED.**

**IT IS FURTHER ORDERED** that the motion of defendant, Parker Drilling Offshore Corporation, for a new trial and, alternatively, for remittitur and to alter or amend judgment is **GRANTED IN PART** as follows: The amended judgment of this court is hereby **VACATED** to the extent that it awards the plaintiff $ 150,000 for future cure/future medical expenses. If, within five days of the date of

entry of this order, the plaintiff, Rickey Brown, accepts a remittitur of the amount awarded for future cure/future medical expenses, reducing the award to $ 100,000, the Court will enter an amended judgment in accordance with the remitted award. If plaintiff, Rickey Brown, does not accept the remittitur within five days of the date of entry of this order, the Court will order a new trial on the issue of future cure/future medical expenses.

**IT IS FURTHER ORDERED** that, in all other respects, the motion of defendant, Parker Drilling Offshore Corporation, for a new trial and to alter or amend judgment is **DENIED.**

New Orleans, Louisiana, July 30, 2003.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**